RAMSBOTTOM *against* PHELPS and others.

On the trial of an appeal from probate, accepting the report of commissioners on the estate of *A,* assigned for the benefit of his creditors, under the statute of 1828; the commissioners having rejected a claim in favour of *B,* founded on a promissory note given to him by *A,* the other creditors of *A* defended against the claim of *B,* contending that the note was given without consideration, and was fraudulent and void as against them; *B,* to establish the validity of his claim, and to rebut the evidence of the defending creditors, offered the admission of *A,* made before his assignment, that the note was a good one; it was held, that such evidence was admissible; but if the admission was fraudulently or collusively made, it would not be entitled to any weight with the jury.

Where the defending creditors, on such trial, offered the admission of *A,* made before as well as after the assignment, that the note in question was without consideration; it was held, that this admission, being in *A's* favour, was not admissible.

THIS was an appeal from a decree of the court of probate, accepting the report of commissioners on the estate of *John Ward & Sons,* assigned for the benefit of their creditors, under the statute of 1828. By this report it appeared, that a claim in favour of *Thomas Ramsbottom* against *John Ward & Sons,* founded on a promissory note given by them to him, for 6859 dollars, with interest, dated *March* 5th, 1833, and payable one year after date, had been presented to the commissioners, and had been by them rejected. The reason assigned for the appeal, was, that said note, at the time it was so rejected, was, and still is, due, principal and interest, from

the makers. This allegation was traversed ; on which issue was joined.

The cause was tried, on such issue, at *Hartford, January* term, 1847, before *Church,* J.

On the trial, *Ramsbottom* presented said note to the court and jury, and proved it to be in the hand-writing of *James Ward,* one of the firm of *John Ward & Sons ;* which was not denied. Sundry creditors of *John Ward & Sons,* whose claims had been allowed by the commissioners, in concurrence with the assignees, defended against said note, and insisted, that it was without consideration and fraudulent, as against the creditors of *John Ward & Sons.* In support of this claim, they introduced evidence to prove, that *Ramsbottom* was a young man, a son-in-law of said *John Ward,* and a workman on wages employed by *John Ward & Sons,* destitute of any known property, intemperate in his habits, and had declared, both before and after the failure of that firm, that they owed him about 1000 dollars, and that he was worth only about that sum. In order to rebut this evidence, the appellant introduced much proof, and claimed that he had proved, that he, *Ramsbottom,* was a native of *England,* and had brought with him from *England,* a large sum of money, which he had loaned to *John Ward & Sons,* in good faith, and for which, in part, said note was given. He also offered one *Reuben Pinney,* as a witness, to prove, that in the year 1842, he, the witness, called on said *James Ward,* to know if *Ramsbottom* was able to purchase a farm of the value of 3500 dollars ; and that *Ward* replied, that he was, if the obligations of *John Ward & Sons* were good. To the admission of this testimony, the creditors objected, on the ground that there was a controversy between them ; that the testimony was hearsay only ; and that *James Ward* was not a party, but was a competent witness, and present in court. The appellant insisted, that the declaration in question, or any declaration by either of the persons composing the firm of *John Ward & Sons,* made long before their failure and assignment, conducing to show that the note in question was a valid and subsisting debt against them, was admissible in evidence. The court overruled the objection, and admitted the testimony of *Pinney.*

The appellees offered *Virgil Stebbins* and *John L. Bunce,*

as witnesses, to prove the admission of *John Ward,* and the other members of the firm of *John Ward & Sons,* made as well before as after their failure and assignment, that said note was without consideration. To the admission of this evidence the appellant objected; and the court ruled it out.

The jury returned a verdict in favour of the appellant; and the appellees moved for a new trial.

*Hungerford* and *Toucey,* in support of the motion, contended, 1. That the declaration of *James Ward,* in favour of the validity of the note in question, was inadmissible. In the first place, the appellees had claimed and offered evidence, tending to prove, that the note was given by *John Ward & Sons,* by collusion between them and *Ramsbottom,* for the purpose of defrauding their creditors. Can their own declarations now be received to repel the fraud? If so, a party to a fraudulent transaction may make evidence at pleasure to disprove it. Those indeed whose hands are the foulest, will be the first to proclaim their purity. Secondly, this declaration was exceptionable, because it was made out of court, not under oath, and without opportunity of cross-examination: it was mere hearsay. Thirdly, *James Ward* was a competent witness, living, and present in court. Fourthly, this case is not one of that class of cases, where the declarations of a party in interest are admissible. If the collusion existed, which it was the object of the testimony to repel, the declaration of *Ward* was not against his interest, but in perfect harmony with the fraudulent scheme in which he was engaged. The party on the record did not claim title under him; nor was there any *privity* between them. In support of these positions, the following cases were cited. *Fitch* v. *Chapman,* 10 *Conn. R.* 8. *Chapin* v. *Pease, Id.* 69. *Treat* v. *Barber,* 7 *Conn. R.* 274. *Nichols* v. *Hotchkiss,* 2 *Day,* 121. *Alexander* v. *Mahan,* 11 *Johns. R.* 185. *Jackson* d. *Ten Eyck &* ux. v. *Richards,* 6 *Cowen,* 617. *Hurd* v. *West,* 7 *Cowen,* 752. 759. *Kent* v. *Walton,* 7 *Wend.* 256. *Whitaker* v. *Brown,* 8 *Wend.* 490. *Bristol* v. *Dunn,* 12 *Wend.* 142, 3. *Ross* v. *Knight,* 4 *N. Hamp. R.* 236. *Barker* v. *Briggs,* 8 *Pick.* 127. *Haynes* v. *Rutter,* 24 *Pick.* 242. *Duckham* v. *Wallace,* 5 *Esp. R.* 251. *Hedger* v. *Horton,* 3 *Car. & Pa.*

179. (14 *E. C. L.* 261.)  *Beauchamp* v. *Parry,* 1 *B. & Adol.*
89. (20 *E. C. L.* 351.)

2. That the admissions made by *John Ward & Sons* that
the note was without consideration, were admissible to prove
that fact.

*T. Smith* and *Chapman,* contra, insisted, 1. That it was
competent to the appellant to prove the admissions of *James
Ward,* made long before the assignment, to prove that the
note in dispute was a good note, and the debt justly due from
*John Ward & Sons.*  It will be conceded, that if *Ramsbottom*
had sued *John Ward & Sons* on this note, before the ordinary
courts, the admissions of one of the members of the firm
would have been evidence against them.  Is the case altered,
by the assignment and consequent change of forum?  Can
the makers of the note deprive the payee of an essential part
of his proof, by their own act?  The presentation of the note
to commissioners, was, in effect, a suit upon it.  The makers
had notice to appear; they had a right to be heard;  they
were deeply interested in the event, as they were entitled to
any surplus there might be ; in short, they were as truly par-
ties as their creditors.

But secondly, if *James Ward* was not strictly a party, the
case is within some of the exceptions to the rule excluding
the admissions of a person who is not a party.  These em-
brace the admissions of a party in interest, though his name
does not appear on the record; (1 *Phil. Ev.* 72.) of one who
is identical in authority with the party on the record; (1
*Phil. Ev.* 77.  1 *Greenl. Ev.* 215.) where there is a com-
munity of design; (*Stark. Ev. pt.* 4. *pp.* 44. 47.) of a person
whose right or duty is represented by the party on the record,
made against the interest of the person making it, while that
interest subsisted in him.  Here, the only subject of contro-
versy, is the obligation of *John Ward & Sons,* growing out of
their note to *Ramsbottom.*  They are represented by their
assignees, who are parties on the record.  The admission was
made by *James Ward,* while his interest subsisted, (if it does
not now,) and it was against his interest.  In support of this
position, and the others above stated, the following authorities
were referred to.  1 *Greenl. Ev.* 221. *s.* 181.  *Stark. Ev.
pt.* 4. *p.* 48.  *Deming* v. *Carrington,* 12 *Conn. R.* 1.  *Smith*

v. *Martin*, 17 *Conn. R.* 399. *Norton* v. *Pettibone*, 7 *Conn. R.* 319. *Williams* v. *Ensign*, 4 *Conn. R.* 456. *Dewitt* v. *Baldwin*, 1 *Root* 138. *Dowton* & al. v. *Cross*, 1 *Esp. R.* 168. *Sloman* v. *Herne*, 2 *Esp. R.* 695. *Hoare* & al. v. *Coryton*, 4 *Taun.* 560. *Watts* & al. v. *Thorpe*, 1 *Campb.* 376. *Clay* v. *Langslow* & al. 1 *Moo. & Mal.* 45. (22 *E. C. L.* 244.) *Williams* v. *Bridges*, 2 *Stark. R.* 42. *Bateman* v. *Bailey*, 5 *Term R.* 512. *Kempland* v. *Macauley* & al. *Peake's Ca.* 65.

2. That the declarations of *John Ward & Sons*, that the note was given without consideration, were declarations *in their favour*, and consequently, were inadmissible. *Smith* v. *Martin*, 17 *Conn. R.* 399.

HINMAN, J. On the trial of this cause in the superior court, the admissions of one of the members of the firm of *John Ward & Sons*, whose estate had been assigned, were permitted to be proved, for the purpose of establishing the claim of the appellant ; and also to rebut certain evidence tending to show, that the note, claimed to be due from said firm, was given without consideration, and was fraudulent and void against their other creditors : and the principal question in the case, is, whether this ruling was correct.

The creditors, who defend against the claim, insist, that this is a controversy between them and the appellant ; that the makers of the note are not parties to the record, and have no legal interest in the decision ; and that they are not so in privity with those of their creditors who are parties, as to make their admissions admissible.

It is not, perhaps, very important, whether the insolvent debtors can, with strict propriety, be said to be parties here, or not ; or even, whether they have any interest in the decision of the case ; still these questions have been argued as if the case depended upon them ; and as they seem to us to involve less difficulty than has been supposed, we will express our opinion upon them. In one sense, these persons are not parties to this proceeding ; they do not appear to defend against the claim, and they are not named in the record as parties. They are, therefore, parties only in the sense that persons in interest, or who may be interested, may be said to be parties ; in the sense that their creditors—those of them

who do not appear to defend against the claim—are parties. But that they might appear, does not seem to admit of any doubt. They are obviously interested, or may be, in the decision of the cause. If the claim is unjust—if there was no consideration for the note—they are interested against its allowance; because, if there should be any surplus of the assigned estate, it would belong to them, and the allowance of this note would reduce it; and if there should be no surplus, they are still interested in paying as large a dividend on their honest debts as possible; because, whatever is not paid by their estate, will remain a debt against them individually. Unless, then, the claim is of such a nature, as that it is valid against them, and invalid against their creditors, their interest is obvious. We are aware, that this is claimed; but it was also claimed, on the trial below, that there was no consideration for the note; and this defence the makers of it could set up. It is a defence too, which the admissions of the makers went to disprove; and until it is established, that the nature of the claim is such as the defendants would have it, the interest of the makers of the note in this decision remains.

Again, the defendants assume throughout the whole argument, that the creditors of *John Ward & Sons*, who appear here, are the real parties, defending against this claim; but there is a fallacy in this. Strictly speaking, the trustees are the more proper parties; and the creditors appear and defend under them. The claims of the appellant, and of the other creditors, are not adverse to each other; but they are mutual claims to be paid out of a common fund. The interest of each creditor may be adverse to the interests of any other creditor; and in this case, it probably is so; because the fund is insufficient to pay them all; and this being so, they have a right to appear. But this cannot alter the nature of the evidence by which each creditor may establish his claim. If it did, then the confessions of every creditor of these insolvent debtors would be evidence in favour of any other creditor. This surely would not be claimed. Debts against an assigned estate stand on the same footing as debts against a deceased person, whose estate is represented insolvent; and the admissions of the insolvent debtors are admissible, for the same reason, that the admissions of a deceased person, made while living, are admissible for the purpose of charging his

*Hartford,*
July, 1847.

Ramsbottom
*v.*
Phelps.

estate.    We cannot doubt, that, upon this ground, the decision of the superior court was correct.

The evidence was admissible, too, on other grounds.    The admissions of persons not parties to the suit, are many times receivable in evidence.    This arises, says Mr. *Greenleaf,* when the issue is substantially upon the mutual rights of such persons at a particular time ; in which case, the practice is to let in such evidence as would be admissible in an action between the parties themselves.    The instances given by this author, in illustration of the rule, are, the debtor's acknowledgment of a debt, in an action against a sheriff for an escape ; the admission of a joint liability, by a third person, in support of a plea in abatement, for the non-joinder of such person as a defendant in the suit ; and the admission of a bankrupt, made before an act of bankruptcy, in proof of a petitioning creditor's debt.    1 *Greenl. Ev.* 221. *s.* 181.    It is obvious, that the issue here was as to the mutual rights of *Ramsbottom* and *John Ward & Sons,* at, and before the assignment.    If the note was valid, at the time it was given, and remained due at the time of the assignment, the appellant had a right to have it allowed.    But if the admissions of the insolvents were not evidence, it is difficult to see how the claim could be established.    The note itself is but little more than an admission ; it amounts to that, and to a promise to pay ; but the promise would be implied from the admission of the debt ; and the fact that this admission is in writing, does not vary the principle upon which it is admissible, for the purpose of proving the debt.    It is, after all, but an acknowledgment of indebtedness by *John Ward & Sons,* and a promise to pay it ; and upon the principles upon which the counsel for the defendants proceed, we do not see how it is admissible, any more than a verbal admission or acknowledgment of similar import.

It is true, there entered into the enquiry, in this case, a question between the other creditors of the insolvents, and *Ramsbottom ;* whether this was a debt which ought to be paid, if the estate should prove insufficient to pay all the *bona fide* debts of the insolvents ; but this cannot alter the rules of evidence, so as to preclude the admissions of the insolvents from being shown.    If these admissions were fraudulently or collusively made, they ought not to have any weight with the jury ; and if shown to be so, they would not have any.

*Hartford,*
July, 1847.

Ramsbottom
*v.*
Phelps.

Indeed, they might be made under such circumstances as to be evidence of collusion, rather than of the validity of the claim; and if so, the appellees would have the benefit of it, with the jury : at all events, the weight to be given them, was for the jury to determine.   We do not think they could have been excluded.

Again, where a party, by succession of title, is so far in privity with another, that the acts of that other would have affected his interest, then the admissions of such person, during the time when his acts would have affected the party's interest, are admissible against him.   It is upon this principle, that the declarations of a former proprietor of real estate, made during the time of his interest, and while he was occupying, are admissible against those claiming under him. *Deming* v. *Carrington,* 12 *Conn. R.* 1.   The principle applies also to the admissions of a deceased person, which are admissible against his executor or administrator, and to assignees of choses in action, as well as to purchasers or successors to property, except indeed in the case of negotiable paper, taken in the regular course of business, where the indorsee does not claim in privity with or under the indorser, but by a title paramount to him.   *Haddan* v. *Mills,* 4 *Car. & P.* 486. (19 *E. C. L.* 487.)   *Norton* v. *Pettibone,* 7 *Conn. R.* 319. *Enos* v. *Tuttle,* 3 *Conn. R.* 247.   *Bateman* v. *Bailey,* 5 *Term R.* 512.   *Cow. & Hill's notes to Phil. Ev.* 644.

It has been seen, that the issue in this case was as to the mutual rights of *Ramsbottom* and *John Ward & Sons,* at and before the time of the assignment; the rights of the appellant being the same now that *Ramsbottom* then possessed, except that the other creditors can set up collusion between the insolvents and *Ramsbottom.*   It follows, therefore, that the declarations of *John Ward* and his partners, are admissible against them, and in favour of the appellant, upon the ground that the trustees, the real parties here, succeed to the same rights and liabilities, so far as the assigned estate is concerned, as *John Ward & Sons* possessed and were subject to, at the time of the assignment.

We have no doubt, that upon these grounds, the evidence in this case was properly received, by the superior court. This opinion is strengthened and confirmed, by the practice in *England,* of admitting the confessions of a bankrupt, in

*Hartford,
July, 1847.*

*Ramsbottom
v.
Phelps.*

order to charge his estate.   In *Bateman* v. *Bailey*, 5 *Term Rep.* 512. Lord *Kenyon* treats this as the settled rule; and it is so laid down, in *Stephens' N. P.* 1630.   A similar practice prevails in *Massachusetts*, under their statute, authorizing creditors, in certain cases, to come in and defend suits, commenced against their debtors.

In these cases, the creditors can make the same defence that the appellees were permitted to make in this case.   In addition to all the defences which their debtors can make, the creditors can also set up the claim that the debt is collusive and fraudulent.   It is the settled rule and practice there, in such cases, to receive the confessions of the defendants in those suits, as evidence for the plaintiff.   *Strong* v. *Wheeler*, 5 *Pick.* 411.   *Lambert* v. *Craig*, 12 *Pick.* 199.   *Carter* v. *Gregory*, 8 *Pick.* 165.

The declarations of the members of the firm of *John Ward & Sons*, in their own favour, were offered to be proved, by the defendants, and were excluded by the court.   This ruling is so obviously correct, that counsel have not pressed the point here.

There was no error in either of the decisions of the superior court; and a new trial is not advised.

In this opinion the other Judges concurred, except ELLSWORTH, J., who gave no opinion, having been of counsel in the cause.

New trial not to be granted.