### In re WEISSMAN.

Circuit Court of Appeals, Second Circuit. May 9, 1927.

No. 171.

1. **Bankruptcy ⊕⇒440(5)—Decree disallowing reclamation claim held reviewable by appeal, and not by petition to revise.**

Decree disallowing claim of petitioner in reclamation proceedings against involuntary bankrupt *held* reviewable by appeal, and not by petition to revise.

2. **Bankruptcy ⊕⇒140(2)—Seller may reclaim property involved in sale to bankrupt, induced by bankrupt's fraud.**

Seller may reclaim property, where sale to bankrupt was induced by bankrupt's fraud.

**3. Bankruptcy ⇐140(2)—Seller, relying on bankrupt buyer's false financial statement issued to commercial agency, has same standing as though statement was obtained directly from bankrupt.**

Bankrupt buyer's false statement of financial condition, issued to commercial agency for purpose of being communicated to patrons of agency applying for credit reports, gives seller, who relies thereon, the same standing as though statement had been obtained by him directly from bankrupt.

**4. Bankruptcy ⇐212—That bankrupt's schedules show debts on date of filing of involuntary petition is no proof of amount owed on a previous date.**

That bankrupt's schedules show debts of certain amounts on date of filing of involuntary petition is no proof of what he owed more than two months before such date.

**5. Bankruptcy ⇐212—Invoices of goods sold to bankrupt would not of themselves, or attached to proofs of claim, be competent evidence of bankrupt's financial condition on certain date.**

Invoices of goods sold to bankrupt would not of themselves, or attached to proofs of claim allowed in bankruptcy proceeding, be competent evidence of bankrupt's financial condition on a certain date.

**6. Evidence ⇐232—Bankrupt, by swearing to schedules made up as respects merchandise liabilities exclusively from invoices, admitted he owed on date previous to filing of petition amounts stated by invoices to be then due.**

Where bankrupt, who kept no books, in making up his sworn schedules showing debts due on date of filing of involuntary petition, used invoices of goods purchased exclusively to show merchandise liabilities, *held*, that this constituted an admission that he owed for merchandise on a date previous to filing of petition sums which such invoices stated he owed on that date.

**7. Evidence ⇐222(1)—Litigant's statements, made out of court, are admissible against him.**

Statements made out of court by a party litigant are admissible against him.

**8. Evidence ⇐232—Bankrupt's admissions in schedules may be used against trustee, to prove falsity of statement made before bankruptcy, on faith of which goods were sold bankrupt.**

A bankrupt's admission in connection with his schedules may be used against his trustee to prove false a financial statement made before bankruptcy, on the faith of which goods were sold to bankrupt, trustee's title being no better than bankrupt's; and rule applies, whether bankruptcy was voluntary or involuntary.

**9. Bankruptcy ⇐212—Bankrupt's admissions in schedules held to make prima facie showing of falsity of financial statement, on faith of which goods were sold him.**

Bankrupt's admissions in his schedules *held* to make prima facie showing of falsity of financial statement issued by him before bankruptcy, on faith of which goods were sold to him by petitioner in reclamation proceedings.

**10. Evidence ⇐155(1)—Exclusion of accountant's testimony as to what invoices of goods sold bankrupt showed concerning amount of indebtedness owing on specified dates held error.**

Where amount of bankrupt's merchandise liabilities on date of filing of involuntary petition, as shown by schedules, was based exclusively on invoices of goods purchased, exclusion of accountant's testimony as to what invoices showed concerning bankrupt's indebtedness on specified dates *held* error.

Appeal from the District Court of the United States for the District of Connecticut.

In the matter of Joseph Weissman, bankrupt. Proceeding by T. A. Shaw & Co. to reclaim goods from bankrupt's trustee. Decree dismissing claim was rendered, and petitioner appeals and petitions to revise. On appeal, reversed and remanded.

See, also, 267 F. 588.

This is a proceeding by T. A. Shaw & Co. to reclaim certain goods from the trustees of Joseph Weissman, who was adjudicated a bankrupt upon an involuntary petition filed November 21, 1919. On September 26, 1919, Weissman placed with claimant an order for the purchase of goods. The order was accepted and the goods delivered, part on November 14, and part on November 20. Before accepting the order, the claimant consulted R. G. Dun & Co., and obtained a credit report which set forth a copy of a financial statement issued by Weissman's office to Dun's agent in New Haven. This statement was dated August 11, 1919, and bore Weissman's typewritten signature, which was confirmed by his written signature on September 29th. The goods were sold in reliance upon this report.

After the bankruptcy proceedings had been instituted rescission was promptly sought on the ground of fraud, and rejected. Reclamation proceedings followed; the fraud alleged being (1) that Weissman's financial statement was false; and (2) that he was insolvent and had no intent to pay when the contract was made.

The goods have been sold under a stipulation that their proceeds shall await the result of these proceedings. The decree below disallowed the petitioner's claim and directed that the proceeds be treated as part of the general estate of the bankrupt.

George E. Beers and Rolfe W. Skulason, both of New Haven, Conn., for appellant.

Archibald Palmer and Shaine & Weinrib, all of New York City (Maxwell Green, of New York City, of counsel), for appellees.

Before HOUGH, MANTON, and SWAN, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). [1] These proceedings were brought before us both by appeal and by petition to revise. To resort to both methods of bringing up the record is wholly unnecessary. Appeal is the proper procedure. In re Prudential Lithograph Co., 270 F. 469 (C. C. A. 2); In re Gold, 210 F. 410 (C. C. A. 7); Hewit v. Berlin Machine Works, 194 U. S. 296, 24 S. Ct. 690, 48 L. Ed. 986; Taylor v. Voss, 271 U. S. 176, 46 S. Ct. 461, 70 L. Ed. 889; Remington, Bankruptcy (3d Ed.) § 3688. We shall consider the case on the appeal.

[2, 3] There is no doubt of the right of a vendor to reclaim his property, when his sale was induced by fraud. In re New York Commercial Co., 228 F. 120 (C. C. A. 2); In re Gold, supra; Jones v. H. M. Hobbie Grocery Co., 246 F. 431 (C. C. A. 5). See, also, Cunningham v. Brown, 265 U. S. 1, 11, 44 S. Ct. 424, 68 L. Ed. 873; 1 Black, Bankruptcy (3d Ed.) § 360. Assuming arguendo Weissman's statement to have been false, the fact that it was issued to a commercial agency, for the purpose of being communicated to patrons of the agency who apply for credit reports, gives the seller, who relied upon it, the same standing as though it had been obtained by him directly from the buyer. Davis v. Louisville Trust Co., 181 F. 10, 30 L. R. A. (N. S.) 1011 (C. C. A. 6); and see In re K. Marks & Co., 218 F. 453 (C. C. A. 2); Eaton v. Avery, 83 N. Y. 31, 38 Am. Rep. 389; Soper Lumber Co. v. Halsted & Harmount Co., 73 Conn. 547, 48 A. 425.

[4-6] The District Court decided against the claimant, on the ground that he had failed to prove the fraud alleged. This necessitates a consideration of the evidence. The financial statement of August 11th showed debts for merchandise of $103,000, and a net worth of $207,000. The claimant sought to prove the falsity of the statement by means of an admission by Weissman. The bankrupt's schedules showed debts owing on November 21 of $1,-300,000. This, without more, would be no proof of what he owed on August 11. Testimony was introduced to show how the schedules were prepared. Mr. Alderman, one of the bankrupt's attorneys, testified that he prepared the schedules, and that in ascertaining the merchandise liabilities he used exclusively invoices which he obtained from the trustees' accountants. Weissman swore to the schedules so prepared. This we regard as an admission by him, not only of his total indebtedness on November 21, but also of the correctness of the way in which this total was arrived at, namely, by adding the items shown upon the invoices as indebtedness owing at dates specified therein. In other words, we think this may be regarded as an admission by Weissman that he owed for merchandise on August 11th the sums which these invoices stated that he owed at that date. It is as though he had handed the invoices to Alderman and said, "These are correct."

An accountant examined the invoices and tabulated the indebtedness shown by them to be owing on specified dates, as follows: On August 10, $208,000; on August 11, $210,000; on September 29, $581,000; on November 15, $894,000. It is true that invoices by themselves, or attached to the proofs of claim allowed in the bankruptcy proceedings, would not be competent evidence to establish the bankrupt's indebtedness on August 11th. But, taken in connection with Weissman's use of the invoices in making up his schedules, we regard them as showing beyond peradventure of doubt, in the absence of contradictory evidence, that the August 11th statement of indebtedness, and the confirmation of the statement on September 29, were false to an extent which proves them absolutely fraudulent.

The problem remaining is whether an admission by the bankrupt, made in connection with filing his schedules, may be used against his trustee in a reclamation proceeding based on fraud.

[7, 8] Statements made out of court by a party litigant are universally admitted against him. 2 Wigmore, Evidence, § 1048; Admissions as an Exception to the Hearsay Rule, 33 Yale L. J. 355. It is everywhere conceded that the debtor's admissions made while his estate was in him are competent evidence also against his assignee in insolvency or trustee in bankruptcy. Ramsbottom v. Phelps, 18 Conn. 278; Von Sachs v. Kretz, 72 N. Y. 548; Smith v. Township of Au Gres, 150 F. 257, 9 L. R. A. (N. S.) 876 (C. C. A. 6); 2 Wigmore, Evidence, § 1081. On this principle, schedules of a voluntary bankrupt, since they are sworn to before the petition is filed, would be competent against the trustee to prove the amount of the bankrupt's indebtedness. They have frequently been admitted, without discussion, even in the trustee's favor, against an alleged preferred creditor. In re Mandel, 127 F. 863 (D. C.) affirmed, 135 F. 1021 (C. C. A. 2); Wellington v. Jackson, 121 Mass. 157; Lynch v. Bronson, 80 Conn. 566, 69 A. 538; Buttz v. James, 33 N. D. 162, 156 N. W. 547.

Their admission as against the alleged preferred creditor has been criticized. See Remington, Bankruptcy (3d Ed.) § 1755. Compare Collier, Bankruptcy (13th Ed.) 26. But we need not consider at this time how

far, if at all, the voluntary bankrupt's schedules are competent in favor of his trustee; they are competent against him to the same extent that they would be against the bankrupt himself. In several cases the schedules have been admitted where the bankruptcy was involuntary, or where the opinion fails to disclose whether it was voluntary or involuntary. Lyttle v. Fifth Nat. Bank, 39 Am. Bankr. Rep. 690 (Ref., S. D. N. Y.); In re Docker-Foster Co., 123 F. 190 (D. C. E. D. Pa.); Hackney v. Raymond Bros. Clarke Co., 68 Neb. 633, 94 N. W. 822, 99 N. W. 675; Utah Ass'n of Credit Men v. Boyle Furniture Co., 39 Utah, 518, 117 P. 800.

The rule which excludes declarations of assignors, grantors, and others, if made after the title or interest in the property in question has passed out of them, finds support in the danger of affording opportunity for fraud were such evidence admitted. It has been said that no title would be safe if declarations of a grantor out of possession could be received as evidence against his grantee. Lent v. Shear, 160 N. Y. 462, 55 N. E. 2. But with reference to receiving the schedules of bankrupts as evidence of the statements therein relative to their financial condition, no difference is apparent in respect to the danger of fraudulent admissions between the schedules of the voluntary and the involuntary bankrupt. Viewed pragmatically, there is as much reason, and no more, for the bankrupt to state honestly his assets and liabilities in the one case as in the other. We think no distinction should be made between voluntary and involuntary proceedings in respect to the competency of the bankrupt's schedules as prima facie evidence against his trustee of his financial condition at the date of the schedules.

It may be conceded that, after the petition is filed, the bankrupt cannot, in general, by admissions affect the trustee's title, although even this is not undisputed. Burke v. Nat. Liberty Ins. Co., 212 App. Div. 738, 209 N. Y. S. 608. Compare Jacobs v. Queen Ins. Co., 195 Mich. 18, 23, 161 N. W. 936. We hold merely that a bankrupt's admission in connection with his schedules may be used against his trustee to prove false a statement made before bankruptcy on the faith of which goods were sold him. The trustee's title is no better than the bankrupt's, and the improbability that the bankrupt will make a collusive admission that his own title was obtained by fraud renders very slight the danger that such evidence will deprive the trustee of property which he ought to get for creditors.

Weissman kept no books. He used the invoices as he would have used his books to make up his sworn schedules. This was an admission by conduct of the accuracy of the statements in the invoices, and the invoices showed his merchandise indebtedness on August 11th to have been above $200,000. Under such circumstances, we think the admission is competent evidence against the trustee in bankruptcy in a suit to reclaim goods on the ground of fraud. The situation is similar to that passed upon in Kuh, Nathan & Fisher Co. v. Glucklick, 120 Iowa, 504, 94 N. W. 1105. There the seller sued the buyer in replevin for goods obtained by false representations of solvency. While the suit was pending the buyer filed a voluntary petition in bankruptcy. The trustee in bankruptcy was thereafter substituted as defendant in the replevin suit. It was held that the bankrupt's schedules were admissible evidence, the court saying:

"All infirmities which inhered in the title to such goods as against Glucklick were available as against Boyd [the trustee]. * * * The case is vastly different from one where the statements or declarations of a vendor, made after delivery of possession, are sought to be introduced to affect the title to the property in the hands of his vendee. * * * Here the evidence sought to be introduced was competent as bearing upon the question of the financial condition of Glucklick, and such, in turn, was material to a determination of the fraud issue tendered by the petition."

Koch v. Lyon, 82 Mich. 513, 46 N. W. 799, goes even further and allows admissions of the fraudulent purchaser made subsequent to bankruptcy to be used by the reclaiming seller against the trustee. Contra, Brock v. Schradsky, 6 Colo. App. 402, 41 P. 512; Wright v. Zeigler Bros., 70 Ga. 501.

[9, 10] The claimant made a prima facie showing of the falsity of the financial statement in reliance upon which the goods were sold. The special master, before whom the evidence was taken, excluded the accountant's testimony as to what the invoices showed concerning the amount of indebtedness owing on specified dates. This was error. Weissman's use of the invoices in making his schedules rendered competent the accountant's testimony. The District Court examined the evidence excluded as well as that admitted, but found it insufficient to prove the claimant's case. With this finding we disagree. But, although the claimant proved a prima facie case, we think the trustees should be given an opportunity to rebut it, if they can, because under the master's ruling they had no reason to introduce rebuttal evidence at the former hearing. The cause will therefore be remanded for further proceedings.

It is unnecessary to consider the second count of the claimant's petition, or the questions raised by the very extraordinary protection accorded the bankrupt in excusing him from giving any testimony in the absence of his special attorney.

The decree is reversed, with costs, and the cause remanded for further proceedings consistent with this opinion.

NOTE.—The late Circuit Judge HOUGH did not see this opinion, but concurred in the result.