C. W. BUTTZ, as Trustee in Bankruptcy of the Estate of Kitsie G. Burdick, a Bankrupt, v. JESSIE JAMES.

(156 N. W. 547.)

Real estate — conveyance of — unlawful preference — void as — national bankruptcy act — grantee — possession — open — notorious — proof — burden of — method of.

   1. Even though a conveyance of real estate may not be void as an unlawful preference under the provisions of § 60a of the national bankruptcy act (act of July 1, 1898, 30 Stat. at L. 562, chap. 541), which, though recorded within four months of the filing of the petition in bankruptcy, is executed and delivered some three weeks prior to the beginning of such four months' period, and where immediately upon such delivery the grantee entered into open, notorious, and hostile possession thereof, and on this question the court expresses no opinion but leaves it to the Federal Courts to decide the burden of proof, of showing this fact is upon the grantee of the property, and the burden is not met by proof merely that a part of the land was cultivated by such grantee

Note.—In analogy with this case, see note in 25 L.R.A.(N.S.) 144, on the effect of recording within the four months' period prescribed in bankruptcy act of 1898, a mortgage for present loan or future advances, particularly page 149, on the application when mortgage is given more than four months prior to bankruptcy but recorded within that period.

and another part farmed by some third party, there being no showing as to whether such third party held under a lease or not, or under whose authority or possession he farmed the same, and nothing is shown as to the use of the balance of the land, and where the land as a whole is admitted to be in several tracts, and to be distant some miles from the place of residence of the grantee.

Additional Syllabus on Petition for Rehearing.

**Bankruptcy — schedules — unlawful preference — fraudulent conveyances.**

2. When adjudication in bankruptcy has been had, the schedules in bankruptcy are competent evidence, both as against those holding under an unlawful preference and those holding by fraudulent conveyances.

**Fraudulent conveyance — bankruptcy — trustee in bankruptcy — recovery of property.**

3. Bankruptcy or insolvency at the time of the conveyance is not necessary in order to prove a transfer fraudulent and made for the purpose of hindering and delaying the creditors, so as to entitle the trustee in bankruptcy to a recovery of the property provided there is fraud, and an intent to delay and defraud the creditors, and such fraud and intention are known to the grantee.

**Bankruptcy — fraudulent conveyance — trustee in bankruptcy.**

4. Property transferred by the bankrupt in fraud of his creditors passes to the trustee in bankruptcy, who takes title for the purposes of his trust.

Opinion filed December 18, 1915.   Rehearing denied February 23, 1916.

Appeal from the District Court of Benson County, *Cowan,* J.

Action to set aside a conveyance of real estate as an unlawful preference under the Federal bankruptcy act. Judgment for defendant. Plaintiff appeals.

Reversed.

Statement of facts by BRUCE, J.

This is an action brought by the trustee of a bankrupt estate to set aside a conveyance of some 520 acres of land which was made by the debtor in bankruptcy, and to recover the same for the creditors of the estate. The plaintiff alleges that the petition in bankruptcy was filed by the debtor on the 27th day of August, 1908, and that: (3) "As the plaintiff is informed and believes, the said Kitsie G. Burdick on the 6th day of April, 1908, and after the debts of said Kitsie G. Burdick scheduled in said bankruptcy proceeding had accrued, conveyed by deed to her daughter, the defendant Jessie James, the aforementioned lands and premises, which deed was duly recorded in the office of the register of deeds in and for the county of Benson,

state of North Dakota, and that about the same time she transferred all her other property to this defendant, leaving herself absolutely insolvent; (4) that as the plaintiff is informed and believes the said conveyance was executed by the said Kitsie G. Burdick without consideration and with intent to hinder, delay, and defraud the creditors of the said Kitsie G. Burdick, including those creditors whose claims are included in the bankruptcy schedules of the said Kitsie G. Burdick while said Kitsie G. Burdick was insolvent, and that the defendant, Jessie James, accepted and received said deed and conveyance of all of said property of said Kitsie G. Burdick, with knowledge of said fraudulent intent on the part of the said Kitsie G. Burdick, and with intent on her part to assist the said Kitsie G. Burdick in her said fraudulent purpose; and to hold said lands and other property as a secret trust for said Kitsie G. Burdick."

The findings of fact of the trial court were as follows: (2) "That on the 6th day of April, 1908, one Kitsie G. Burdick was the owner of 760 acres of land in Benson county, state of North Dakota. That on the said date she transferred 520 acres of said land, *viz.*, the west half of the northwest quarter and the southwest quarter of the northwest quarter and the southwest quarter of the northeast quarter of section 33 in township 154 north; range 66, west of the fifth p. m. and the south half of the northeast quarter and the north half of the southeast quarter of section 23, and the east half of the northeast quarter and the southwest quarter of the northeast quarter and the northeast quarter of the southeast quarter and lots 3 and 4 of section 22, all in township 153 north; range 66, west of the fifth p. m. to the defendant in this action, Jessie James, who is a daughter of the said Kitsie G. Burdick; (3) that there were mortgages against said land for $3,400, which together with accrued interest and unpaid taxes against said land amounted to about $4,000 when said transfer was made, which said defendant, Jessie James, assumed and agreed to pay as part of the consideration therefor; (4) that said land was of the value of $6,500 at the time of said transfer, leaving an equity therein of about $2,500; (5) that the deed to this land was delivered by Kitsie G. Burdick to the defendant at the time of said transfer, and was recorded by the defendant in June, 1908, and said deed and land was in the possession of the defendant since said date; (6) that the defendant, Jessie James, paid and

agreed to pay as a consideration for said land, to the said Kitsie G. Burdick, the sum of $50 in cash, and also settled and paid an account held by defendant and her husband, John K. James, against Kitsie G. Burdick for labor performed by them for her on the threshing machine and in the cook car of said Kitsie G. Burdick during the threshing seasons of 1906 and 1907. And said defendant assumed and agreed to pay all indebtedness and taxes against said land, amounting to about $4,000, and agreed as a further consideration to support and care for the said Kitsie G. Burdick and her husband, Orlin L. Burdick, the father and mother of defendant, in their old age; (7) that said Kitsie G. Burdick was still the owner and in possession of 240 acres of land at the time she made this transfer to the defendant, and continued as such owner until May 23, 1908, when she sold the said 240 acres to one Ole S. Aaker; (8) that Kitsie G. Burdick was solvent at the time the 520 acres of land above described was transferred to the defendant herein, and continued to be solvent for some time afterwards, and had sufficient property to pay all of her obligations; (9) that one Orlin L. Burdick acted as the agent of Kitsie G. Burdick in all of these transactions, and was authorized by her to dispose of any or all of the land owned by her in any manner he saw fit, and receive therefor any consideration he might deem adequate, and made this sale of the above described land to the defendant herein, Jessie James; the said Kitsie G. Burdick signing and delivering the said deed after the transaction was closed; (10) that said land sold to Ole S. Aaker was, at a fair valuation of the value, more than sufficient to pay all debts owing by Kitsie G. Burdick; (11) that afterwards and on the 28th day of August, 1908, Kitsie G. Burdick filed her petition and schedules in bankruptcy, in which she listed her debts unsecured in the sum of $645, and all debts secured and unsecured amounting to about $1,000; (12) that the transfer of the said 520 acres of land made by Kitsie G. Burdick to the defendant herein, Jessie James, was not made to hinder, delay, or defraud the creditors of said Kitsie G. Burdick, but was made in entire good faith by Kitsie G. Burdick, and that the defendant, Jessie James, acted in entire good faith in purchasing the same." Following such findings the court entered judgment quieting the title to said lands in the said defendant, Jessie James, and from this judgment the plaintiff has appealed.

*Torger Sinnes, Henry G. Middaugh,* and *Rolla F. Hunt,* for appellant.

It is the date of the recording of the deed, and not the date of delivery, that is material in bankruptcy proceedings.    Until the actual recording of the deed, the land was subject to levy under attachment or execution at the suit of any creditor of the grantor, the debtor. National Bankruptcy Act, § 60a; Rev. Codes, 1905, § 5038, Comp. Laws 1913, § 5594; Benner v. Scandinavian American Bank (1913) 73 Wash. 488, 131 Pac. 1149, Ann. Cas. 1914D, 702; Telford v. Hendrickson, 120 Minn. 427, 139 N. W. 941; First Nat. Bank v. Connett, 5 L.R.A.(N.S.) 148, 73 C. C. A. 219, 142 Fed. 33; Note to Loeser v. Savings Deposit Bank & T. Co. 18 L.R.A.(N.S.) 1233; 1 Emerson, Bankr. 1382; 1 Loveland, Bankr. 499; Re Sturtevant, 110 C. C. A. 68, 188 Fed. 196.

But the transfer was in fraud of creditors under the laws of this state.    Bush v. Export Storage Co. 136 Fed. 918; 30 Stat. at L. 564, § 67e, cl. 3; Comp. Laws 1913, § 7220; Rev. Codes, 1905, § 6640, Comp. Laws 1913, § 7223; 20 Cyc. 439, 461.

Where the transfer is between close relatives the general rule is that the burden of proof is on the defendant to establish fairness and good faith, and adequate consideration.  Adoue v. Spencer, 62 N. J. Eq. 782, 56 L.R.A. 817, 90 Am. St. Rep. 484, 49 Atl. 10; Elwell v. Walker, 52 Iowa, 256, 3 N. W. 70; Peterson v. Rone, 76 Iowa, 447, 41 N. W. 68; Plummer v. Rummel, 26 Neb. 142, 42 N. W. 336; Bartlett v. Cheesbrough, 23 Neb. 767, 37 N. W. 652; Fluegel v. Henschel, 7 N. D. 276, 66 Am. St. Rep. 642, 74 N. W. 996.

The participation in the fraud of the vendee, even though full consideration be paid, will render the deed and transaction invalid.   Wood v. Chambers, 20 Tex. 247, 70 Am. Dec. 382; Craig v. Zimmerman, 87 Mo. 475, 56 Am. Rep. 466; Chapel v. Clapp, 29 Iowa, 191; Liddle v. Allen, 90 Iowa, 738, 57 N. W. 603; Biddinger v. Wiland, 67 Md. 359, 10 Atl. 202; Smith v. Collins, 94 Ala. 394, 10 So. 334; Metropolitan Bank v. Durant, 22 N. J. Eq. 35; Hathaway v. Brown, 18 Minn. 414, Gil. 373; Hough v. Dickinson, 58 Mich. 89, 24 N. W. 809; Kansas Moline Plow Co. v. Sherman, 3 Okla. 204, 32 L.R.A. 33, 41 Pac. 623; Jones v. Hetherington, 45 Iowa, 681; Rindskopf v. Myers, 87 Wis. 80, 57 N. W. 967; Dyer v. Taylor, 50 Ark. 314, 7 S. W. 258; Holladay

Case, 27 Fed. 830; Dodd v. Gaines, 82 Tex. 429, 18 S. W. 618; Eureka Iron & Steel Works v. Bresnahan, 66 Mich. 489, 33 N. W. 834; Hanchett v. Kimbark, 118 Ill. 121, 7 N. E. 491.

But the law casts upon the vendee no duty to inquire into the motives or circumstances of his vendor, unless there are brought to his attention or he has knowledge of suspicious facts or circumstances, as seem to have existed here. State ex rel. Peirce v. Merritt, 70 Mo. 276; Baker v. Bliss, 39 N. Y. 70; Stearns v. Gage, 79 N. Y. 102; Woodworth v. Paige, 5 Ohio St. 70; Tuteur v. Chase, 66 Miss. 476, 4 L.R.A. 832, 14 Am. St. Rep. 577, 6 So. 241; White v. State, 103 Ala. 72, 16 So. 63; Kemmerer v. Tool, 78 Pa. 147.

A grantee who, before making full payment, receives knowledge that the transfer was fraudulent on the part of his grantor, makes further payments to his grantor at his peril, as to such payments he is regarded as a participant in the fraud, and the conveyance may be up *pro tanto*. Crawford v. Kirksey, 55 Ala. 282, 28 Am. Rep. 704; Rhodes v. Green, 36 Ind. 7; Perkins v. Swank, 43 Miss. 349; Hedrick v. Strauss, 42 Neb. 485, 60 N. W. 928; Davis v. Ward, 109 Cal. 186, 50 Am. St. Rep. 29, 41 Pac. 1010; Jewett v. Palmer, 7 Johns. Ch. 65, 11 Am. Dec. 401; Frost v. Beekman, 1 Johns. Ch. 298; Arnholt v. Hartwig, 73 Mo. 487; Kitteridge v. Chapman, 36 Iowa, 348; Green v. Green, 41 Kan. 472, 21 Pac. 586, 16 Am. & Eng. Enc. Law, 838, note; Clements v. Moore (Clements v. Nicholson), 6 Wall. 299, 18 L. ed. 786; Sargent v. Eureka Spund Apparatus Co. 46 Hun, 19.

Notes which are given for the purchase price do not constitute payment as between grantor and grantee, so long as such papers remain in the hands of the grantor. Freeman v. Deming, 3 Sandf. Ch. 327; Partridge v. Chapman, 81 Ill. 137; Baldwin v. Sager, 70 Ill. 503; Rush v. Mitchell, 71 Iowa, 333, 32 N. W. 367; Paul v. Fulton, 25 Mo. 163; Dixon v. Hill, 5 Mich. 404; Davis v. Ward, 109 Cal. 186, 50 Am. St. Rep. 29, 41 Pac. 1010; Daisy Roller Mills v. Ward, 6 N. D. 317, 70 N. W. 271; Coiron v. Millaudon, 19 How. 115, 15 L. ed. 575; Clements v. Moore (Clements v. Nicholson) 6 Wall. 312, 18 L. ed. 788; Bean v. Smith, 2 Mason, 252, Fed. Cas. No. 1,174; 18 Myer, Fed. Dec. 406; Tompkins v. Sprout, 55 Cal. 31; Robinson v. Stewart, 10 N. Y. 189; Lobstein v. Lehn, 120 Ill. 549, 12 N. E. 68.

"If property be conveyed with the design on the part of the vendor, participated in by the vendee, to hinder, delay, or defraud creditors, the vendee's title will not be protected, even though he paid full consideration." Liddle v. Allen, 90 Iowa, 738, 57 N. W. 603; Chapel v. Clapp, 29 Iowa, 191; Chapman v. Ransom, 44 Iowa, 377; Sweet v. Wright, 57 Iowa, 510, 10 N. W. 870; Williamson v. Wachenheim, 58 Iowa, 277, 12 N. W. 302; Dokken v. Page, 77 C. C. A. 674, 147 Fed. 438; Kansas Moline Plow Co. v. Sherman, 3 Okla. 204, 32 L.R.A. 33, 41 Pac. 623; Gress v. Evans, 1 Dak. 387, 46 N. W. 1132; Young v. Harris, 4 Dak. 367, 32 N. W. 97; Shauer v. Alterton, 151 U. S. 607, 38 L. ed. 286, 14 Sup. Ct. Rep. 442; Wood v. Carpenter, 101 U. S. 135, 141, 25 L. ed. 807, 809; Kennedy v. Green, 3 Myl. & K. 722, 21 Eng. Rul. Cas. 820; Rev. Codes, 1905, § 4099, Comp. Laws 1913, § 4431; 29 Cyc. 49.

*F. G. Kneeland,* for respondent.

Many cases hold that recording or registering of deed, under statutes like ours, is not required to complete the transfer, under the application of the bankruptcy act. Re Hunt, 139 Fed. 283; Re Chadwick, 140 Fed. 674; Meyer Bros. Drug Co. v. Pipkin Drug Co. 69 C. C. A. 240, 136 Fed. 396.

The deed here in question was valid, and its earlier record as against no person was required by the laws of this state,—the laws which here govern. Comp. Laws 1913, § 5594; Ildvedsen v. First State Bank, 24 N. D. 227, 139 N. W. 105; Telford v. Hendrickson, 120 Minn. 427, 139 N. W. 941.

Where a preference under the bankruptcy law is claimed, the burden of proof is upon the plaintiff to establish such preference. Re Chappell, 113 Fed. 545; Benjamin v. Chandler, 142 Fed. 217; Tumlin v. Bryan, 21 L.R.A.(N.S.)960, 91 C. C. A. 200, 165 Fed. 166.

No presumption arises from the adjudication in bankruptcy that the bankrupt was insolvent for four months, or for any period, before his petition was filed, and hence it is incumbent on the trustee to prove the insolvency. Re Chappell, supra; Collier, Bankr. 3d ed. 46.

If, at the time the deed was given and delivered, it was not intended by either party as a preference, a failure to record it until such a time as the maker becomes insolvent would not make it a preference. Brad-

ley, C. & Co. v. Benson, 93 Minn. 91, 100 N. W. 670; Halbert v. Pranke, 91 Minn. 204, 97 N. W. 976; Dean v. Plane, 195 Ill. 495, 63 N. E. 274; Re New York Economical Printing Co. 49 C. C. A. 133, 110 Fed. 514; Re Thompson, 122 Fed. 174; Re Antigo Screen Door Co. 59 C. C. A. 248, 123 Fed. 249; Seager v. Lamm, 95 Minn. 325, 104 N. W. 1; Loeser v. Savings Deposit Bank & T. Co. 18 L.R.A. (N.S.) 1234, note; Loveland, Bankr. 3d ed. § 203a, p. 622.

A judgment, to be upheld, must be supported by a sufficient pleading. Satterlund v. Beal, 12 N. D. 122, 95 N. W. 518; 23 Cyc. 816; 38 Cyc. 1970; Fifer v. Fifer, 13 N. D. 28, 99 N. W. 763.

Where one seeks to set aside a deed for fraud, his proof must be clear and convincing. The burden here is on plaintiff. Englert v. Dale, 25 N. D. 587, 142 N. W. 169; McKillip v. Farmers' State Bank, 29 N. D. 544, 151 N. W. 287.

The fact that the parties to the deed are relatives raises no presumption of fraud. Fluegel v. Henschel, 7 N. D. 276, 66 Am. St. Rep. 642, 74 N. W. 996.

The fact that a grantor is insolvent nearly five months after the date of his deed, is no evidence of insolvency at the date thereof. Re Chappell, 113 Fed. 545; 20 Cyc. 458; Kain v. Larkin, 131 N. Y. 300, 30 N. E. 105; Hyde v. Chapman, 33 Wis. 391; Bishop v. State, 83 Ind. 67; Nevers v. Hack, 138 Ind. 260, 46 Am. St. Rep. 380, 37 N. E. 791; Greer v. Richardson Drug Co. 1 Tex. Civ. App. 634, 20 S. W. 1127; Windhaus v. Bootz, 92 Cal. 617, 28 Pac. 557; Fluegel v. Henschel, 7 N. D. 276, 66 Am. St. Rep. 642, 74 N. W. 996.

Insolvency must exist at the time of the transfer. Greer v. Richardson Drug Co. 1 Tex. Civ. App. 634, 20 S. W. 1127; Kain v. Larkin, 131 N. Y. 300, 30 N. E. 105; Sherman v. Hogland, 54 Ind. 579; Windhaus v. Bootz, 92 Cal. 617, 28 Pac. 557; McCole v. Loehr, 79 Ind. 432; Whitesel v. Hiney, 62 Ind. 168.

Without regard to the time of the occurrence of two transactions, if they are shown to be independent, distinct, substantive transactions, the fraud of the one cannot be visited on the other, shown to be free from fraud. Nelms v. Steiner Bros. 113 Ala. 562, 22 So. 435; Kock v. Bostwick, 113 Mich. 302, 71 N. W. 473; Muir v. Miller, 103 Iowa, 127, 72 N. W. 409; Kickbusch v. Corwith, 108 Wis. 634, 85 N. W.

149; McKillip v. Farmers' State Bank, 29 N. D. 541, 151 N. W. 287; 20 Cyc. 413.

Conveyances such as the one shown by the record here to have been are universally upheld by the courts. McKillip v. Farmers' State Bank, 29 N. D. 544, 151 N. W. 287.

Bruce, J. (after stating the facts as above). The main question for determination in this case is whether the proof shows an unlawful preference under § 60a of the national bankruptcy act, and, as incident thereto, whether a deed which is executed more than four months prior to the filing of a petition in bankruptcy but which is not recorded until a date which comes within such four months' period, is an unlawful preference under the provisions of § 60a of the national bankruptcy act.

In the case at bar the deed was dated and delivered on April 6, 1908, but was not recorded until July, 1908. The adjudication in bankruptcy was on August 2, 1908, and this date was some four months after the date of the delivery and execution of the deed but less than four months after the time of the recording of the instrument.

Section 60a of the national bankruptcy act reads as follows: "A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment, or transfer, will be to enable anyone of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. Where the preference consists in a transfer, such period of four months shall not expire until four months after the *date of the recording or registering* of the transfer, *if by law such recording or registering is required."* [32 Stat. at L. 799, chap. 487, Comp. Stat. 1913, § 9644.]

There is some conflict in the authorities as to whether the period of four months begins to run at the time of the actual recording in cases where, though the grantee has not recorded his deed, he has nevertheless entered into open, notorious, and hostile possession of the premises, so that the creditors of the estate and the public generally have adequate

notice of his occupancy. Compare Re Hunt, 139 Fed. 283; Re Chadwick, 140 Fed. 674; Meyer Bros. Drug Co. v. Pipkin Drug Co. 69 C. C. A. 240, 136 Fed. 396, with Benner v. Scandinavian-American Bank, 73 Wash. 488, 131 Pac. 1149, Ann. Cas. 1914D, 702; Telford v. Hendrickson, 120 Minn. 427, 139 N. W. 941. It is not necessary, however, for us to pass upon this question, and we prefer not to do so, as it is one which must ultimately be determined by the Federal courts. It is sufficient to say that, even though we hold that the running of the four months' period is not required by the statute in all cases to begin with the recording of the instrument, and that, if due notice is given of the conveyance, such recording is not necessary, we must nevertheless hold that the giving of the notice must be clearly established, and that the burden of proof of showing the same is on the grantee, who seeks to take advantage thereof. If such notice is based upon the theory of the possession of the grantee under the deed, such possession must be open, notorious, and hostile. There is no such proof in the case at bar. All that we find in the record on the subject is the testimony of the witness Kitsie G. Burdick, who, in answer to the leading question, "She has been in possession of that land ever since?"—answered, "Yes, sir," and the testimony of the defendant, Jessie James, the grantee of the deed, who testified as follows: "Q. You farmed the land in 1908? A. Which land? Q. This 520 acres that is in question in this lawsuit? A. A part of it. Q. Who farmed the rest of it? A. I guess August Piper had part of it." This evidence falls far short of showing an open, notorious, and hostile possession, and it is to be noticed that to all of these questions counsel for the defendant strenuously objected, in place of opening up the question and doing all that he could to show the nature of the possession. The evidence shows clearly that the land was situated in different tracts and some distance from the home of the defendant, Jessie James, and there is no evidence whatever of any open and notorious possession thereof which would be notice to the world at large.

"The words 'open and notorious possession' as applied to the adverse holding of land by another, mean that the disseisor's claim of ownership must be evidenced by such acts and conduct as are sufficient to put a man of ordinary prudence on notice of the fact that the land in

question is held by the claimant as his own. The mere possession of the land is not enough for this purpose. An adverse possession entirely excludes the idea of a holding under the true owner. It is the knowledge, either actual or imputable, of the possession of his lands by another, claiming to own them bona fide and openly, that affects the legal owner thereof" (see 1 R. C. L. 700); and the same measure of proof of notice of possession which is necessary to acquire title by adverse occupancy as against the original owner should, in our opinion and in the case of an unrecorded deed, be required of the grantee to avoid the provisions of the bankruptcy act as against the trustee in bankruptcy and the creditors of the bankrupt. A distinction, too, must be made between acts of possession which would be notice to the owner of property and those which would be notice to the world at large or to the creditors of a bankrupt estate.

Constructive notice has been defined in § 7290 of the Compiled Laws of 1913, which reads as follows: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact and who omits to make such inquiry with reasonable diligence is deemed to have constructive notice of the fact itself." Although it may be true that the owner of land which is lying at some distance from his residence might be deemed to have constructive notice of the claims and occupancy of a third person who has plowed or cultivated such land, and this from the very fact of seeing the land after cultivation and knowing that he himself has not done the work, yet we can hardly hold that this would be true of a third party or of a creditor, especially in a state like North Dakota where large areas of land are cultivated, through agents, by nonresidents, and by merely putting teams upon them in the springtime and in the fall, and without any tenancy or occupancy whatever being involved. Section 5594 of the Compiled Laws of 1913, being § 5038 of the Revised Codes of 1905, amends § 3594 of the Revised Codes of 1899, § 671, Civil Code 1877, and places attachment creditors in the same position as good-faith purchasers, so that the recording of the deed is as necessary to cut off their rights as it is to cut off those of the latter, and in this respect the statute overthrows the ruling of this court in Leonard v. Fleming, 13 N. D. 629, 102 N. W. 308, in which it was held that "a purchaser of real estate at

a sheriff's sale under attachment proceedings acquires no title as against a deed delivered before the levy of the attachment, but recorded after the attachment and before the judgment." Mott v. Holbrook, 28 N. D. 251, 148 N. W. 1061. It is perfectly clear to us, therefore, that although the bankruptcy act may possibly not require recording as an absolute prerequisite to the validity of a deed as against a creditor, where such creditor has actual or constructive notice of the execution and delivery of the same, and on this point we express no opinion, it does require that such recording shall be necessary in all cases where it would have been necessary to cut off the rights of a subsequent purchaser or of an attachment creditor. Under the holdings of this court an unrecorded deed is of no value against a purchaser or attachment creditor who purchases or levies in good faith and without knowledge, actual or constructive, of a prior deed; and, as we have before said, the record in this case does not show any possession on the part of the defendant which would amount to constructive notice to such persons nor any actual notice to them of the real facts in the case. The deed, therefore, is entirely inoperative as far as the trustee in bankruptcy is concerned.

Such being the case, it is not necessary for us to determine whether the evidence in this case justifies a holding that the transfer was in fraud of the rights of creditors under the laws of North Dakota. It is well, however, to say that the court is unanimous in the opinion that the subsequent transfer to Aaker was in fraud of creditors, and to also add that, in the opinion of the majority of the court, though not in the opinion of the writer of this opinion, the evidence is such as to warrant the holding that the transfers of the 520 acres of land to the defendant and of the 240 acres of land to Aaker were part of the same fraudulent scheme, and that fraud was at the base of and invalidated both transfers.

The judgment of the District Court is therefore reversed, with directions to the trial court to enter a judgment adjudging to be null and void the conveyances of the said 520 acres of land to the said Jessie James, and quieting the title in the plaintiff as against the claims of the said defendant, Jessie James, and awarding the possession of the said prem-

ises to the said trustee. The costs and disbursements of this appeal will also be taxed against the defendant and respondent.

## On Petition for Rehearing.

BRUCE, J. Counsel for respondent files a petition for a rehearing in this case on which he asserts that this court has in its principal opinion entirely overlooked the second and third points:

"Second. That the appellant did not prove (a) that the grantor was insolvent at the time the transfer was made, or (b) that the grantee had reasonable cause to believe it was intended to give a preference.

"Third. That the question of a preference was not within the issues presented by the pleadings, nor a theory on which the case was tried in the district court."

He also states that the court overlooked this point:

"That plaintiff is not entitled to recover in such action as this, unless he proves that claims of creditors have been filed and allowed in the bankruptcy proceedings, and that the assets of the bankrupt estate, outside of the property alleged to have been fraudulently conveyed, is insufficient to pay such claims. We submit (he says) that there is no evidence in this case of any claim proved or allowed in the bankruptcy case of Kitsie G. Burdick; nor as to the assets of the estate, unless the schedules in bankruptcy, exhibit 1, are held to be competent evidence in this case, a question before referred to."

In conclusion he says: "The record discloses that the satisfaction of the debt due the defendant was not the only consideration, one part of the consideration being the assumption of mortgages of considerable amount. In case the defendant has paid any of these mortgages, it would seem that she should be duly protected. It would also seem clear that if the value of the land is more than enough to satisfy in full all claims against the bankrupt estate, which appears quite probable, the residue should belong to Jessie James, and not to Kitsie G. Burdick, on the ground that the conveyance was valid as between the parties, and the trustee's rights are limited to the satisfaction of the bankrupt estate. If the transfer were in fact both intended as a preference and to defraud creditors of the grantor, still the grantor clearly could not have suc-

ceeded, by action in her own name, to have the property restored to her. The order of this court would do that indirectly, provided there is a surplus value in the land above the needs of the claims against the bankrupt estate."

The order referred to was that the district judge "enter a judgment adjudging to be null and void the conveyances of the said 520 acres of land to the said Jessie James, and quieting the title in the plaintiff as against the defendant, Jessie James."

The majority of this court, as stated in the principal opinion, are of the opinion that the evidence is such as to warrant the holding that the transfers of the 520 acres of land to the defendant and of the 240 acres of land to Aaker, and the giving of the mortgage to the defendant on the latter property, are part of the same fraudulent scheme, and that fraud was at the basis of and invalidated both transfers. They hold, in short, that the allegation of the plaintiff is sustained which states that "said conveyance . . . [in fact, both conveyances were] executed by the said Kitsie G. Burdick without consideration and with intent to hinder, delay, and defraud the creditors of the said Kitsie G. Burdick, . . . and that the defendant, Jessie James, accepted and received said deed and conveyance of all of said property of said Kitsie G. Burdick, with knowledge of said fraudulent intent on the part of the said Kitsie G. Burdick and with intent on her part to assist the said Kitsie G. Burdick in her said fraudulent purpose, and to hold said lands and other property as a secret trust for said Kitsie G. Burdick."

Such being the holding of the majority of this court, it is immaterial whether at the time of the conveyance of the 520 acres of land now in question to the said Jessie James the said Kitsie G. Burdick was insolvent or not. The schedules in bankruptcy which were signed by Kitsie G. Burdick disclosed that she had eight unsecured creditors with an aggregate of $649.10 of claims, and that these debts were contracted between the years of 1904 and 1908; the largest single item being $260 contracted in 1905, and the next largest item being $217 for money contracted in 1908. On the 6th day of April, 1908, Kitsie G. Burdick was the owner of 760 acres of land, which was encumbered for the aggregate sum of $4,800, and the value of which was stated in

such schedules at the aggregate sum of $14,700. The majority of this court holds that these equities, and which alone could have satisfied the unsecured debts, though conveyed in two separate deeds, were conveyed as a part of the one and the same transaction, and with the same fraudulent intent, and for the purpose of hindering, delaying, and defrauding the unsecured creditors. If this was the case, and the majority of this court holds it to be the case, the fact of the actual insolvency of the said Kitsie G. Burdick at the time of the first conveyance is not material.

It is true that the schedules in bankruptcy were the only specific evidence of the indebtedness of the said Kitsie G. Burdick, and that the admission of the schedules was objected to as being "incompetent, irrelevant, and immaterial, and as having nothing to do with the issues in this case." These schedules, however, were, under the pleadings and issues in the case, competent, relevant, and material.

The answer specifically admitted the first paragraph of the complaint. That paragraph alleged that "on the 22d day of August, 1908, one Kitsie G. Burdick, of Graham Island, Benson county, North Dakota, duly filed a petition in the United States District Court for the district of North Dakota, praying that she be adjudged a bankrupt pursuant to the act of Congress, and that pursuant to such petition the said Kitsie G. Burdick was by said court on said date duly adjudged a bankrupt," etc. No matter what may be the holdings of the cases where no adjudication in bankruptcy has been had, the cases, so far as we can learn, are practically unanimous that where such adjudication has been had and bankruptcy has been determined, that the schedules in bankruptcy are competent evidence of the bankrupt, both as against those holding under an unlawful preference and those holding by fraudulent conveyances. See Hackney v. Hargreaves Bros. 68 Neb. 624, 99 N. W. 675, 13 Am. Bankr. Rep. 164; Re Docker-Foster Co. 123 Fed. 190, 10 Am. Bankr. Rep. 584; Bank of State v. Southern Nat. Bank, 170 N. Y. 1, 62 N. E. 677; Utah Asso. v. Boyle Furniture Co. 39 Utah, 518, 119 Pac. 800, 26 Am. Bankr. Rep. 867.

Bankruptcy, however, or insolvency at the time of the conveyance, was not necessary to be shown in order to prove the transfer fraudulent and made for the purpose of hindering and delaying the creditors; and

as we understand our statute, provided there is fraud and an intent to hinder and delay the creditors, and such fraud and intention is known to the grantee, the transfer may be set aside, even if there is no actual insolvency at the time of its making. Section 6637 of the Revised Codes of 1905, § 7220 of the Compiled Laws of 1913, reads: "Every transfer of property or charge thereon made, every obligation incurred and every judicial proceeding taken with intent to delay or defraud any creditor or other person of his demands is void against all creditors of the debtor and their successors in interest and against any persons upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor."

Nor as long as there are creditors is insolvency at the time of the making of the instrument necessary to the setting aside of a fraudulent transfer, even under the Federal Bankruptcy act. "The trustee," says the Federal act, "may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a bona fide holder for value prior to the date of the adjudication." [30 Stat. at L. 566, chap. 541, § 70e, Comp. Stat. 1913, § 9654.] In construing this act, the court, in the case of Bush v. Export Storage Co. 136 Fed. 918, said: "Transfers which are deemed fraudulent in bankruptcy, and so declared by the bankruptcy act itself, are, first, conveyances and transfers by which a creditor obtains a preference of his claim over other creditors; second, conveyances which are intended to hinder and delay or defraud creditors; and, third, . . . transfers void as to creditors under the local law of the several states; but these transfers are prohibited, and authority vested in the trustee to set them aside, only when made within the four months' limitation. But besides this class of transfers made void by the bankruptcy act itself, as being against its policy of equal and fair distribution, the bankruptcy law (§ 70a, subsec. 4, 30 Stat. at L. 566, chap. 541) provides that the trustee shall be vested by operation of law with any property transferred by the bankrupt in fraud of his creditors, the precise language of the act being, 'transferred by him in fraud of his creditors.' There is no four months' limitation on this class of transfers, and this provision includes fraudulent conveyances

33 N. D.—12.

which are so by the common law, by statute law, and by any other recognized rule of law of the state." See also Loveland, Bankr. 2d ed. § 158 ; Re Scrinopskie, 10 Am. Bankr. Rep. 221.

Nor do we believe that there is any basic merit in counsel's objection to the language used by this court in its former opinion, in which it directed the trial court to enter judgment adjudging to be null and void the conveyance of the said 520 acres of land to the said Jessie James,. and quieting the title in the plaintiff as against the claims of the said defendant, Jessie James, and awarding the possession of the said premises to the said trustee. The title, however, will, of course, be quieted and the possession rendered to the trustee merely for the purposes of the trust. The title of the trustee is and will be that of a trustee for the creditors and parties interested in the estate after the debts are paid. After the said debts are paid the remainder will be turned over to whomsoever it belongs, whether that remainder be real estate or personal property, These matters, however, are for the bankruptcy court to determine. All that we have to do is to give the trustee complete control of the property for the purposes of his trust.

"By subdivision 4," says Collier on Bankruptcy, 10th ed. on p. 1002,. "property transferred by the bankrupt in fraud of his creditors passes to his trustee. This is the converse of the doctrine that trustees take title subject to equities ; they also take title to property which the bankrupt has fraudulently transferred and in which, therefore, the creditors have equities. The trustee's interest in such property is stronger than was that of the creditors in whose stead he stands, *for he has a title.* The trustee is vested, not only with the title of the property, but also with the creditors' rights of action with respect to property of the bankrupt fraudulently transferred or encumbered by him, and he may assail in their behalf all of such transfers and encumbrances to the same extent as though the debtor had not been declared a bankrupt. . . . It is apparent that this provision applies to all property transferred by the bankrupt at any time in fraud of his creditors."

The petition for a rehearing is denied.